```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Power Marketing Direct, Inc.,

    Plaintiff,

                                   Case No. 2:03-cv-1004
                                   JUDGE GRAHAM

    v.

Alan Ball,

    Defendant.

## MEMORANDUM OPINION AND ORDER

In this action, Power Marketing Direct, Inc., ("plaintiff"), an Ohio corporation, seeks injunctive relief against Alan Ball ("defendant"), a resident of Utah.  After being served in state court, defendant filed a notice of removal invoking the diversity jurisdiction of this court.

In the four-count complaint, plaintiff alleged: (1) breach of contract; (2) violation of the uniform trade secret act, Ohio Revised Code §1333.61, et seq.; (3) tortious interference with contractual and business relationships; and (4) civil conspiracy.

On April 6, 2005, this court dismissed counts 1,2, and 4 in accordance with Fed. R Civ. P. 12(b)(6), as they failed to state a claim for which relief could be granted.  Count 3, the tortious interference with contractual and business relationships claim, was allowed to continue.  Discovery is complete and this matter is now before the court on defendant's motion for summary judgment.

## I. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. LaPointe, 8 F.3d at 378. The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The Court must view the evidence, all facts, and any inferences that

may permissibly be drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.

Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## II.  Background

Plaintiff is a corporation engaged in the business of selling furniture and bedding products through approximately 130 licensed third-party dealers.  Plaintiff licenses its dealers to use a unique marketing and sales program to sell furniture and bedding products provided by plaintiff.  Plaintiff also provides training and continuous administrative support to its licensed dealers.

Plaintiff recruits prospective dealers and requires them to sign confidentiality and licensing agreements before undergoing training.  New dealers are made aware that all licensed dealers have signed similar licensing agreements.

In September, 2001, plaintiff approached defendant about joining its network as a licensed dealer and defendant agreed. For approximately one year, defendant operated as a licensed dealer.  In August, 2002, defendant stopped purchasing products from plaintiff and discontinued the business relationship.

Plaintiff alleges that after defendant discontinued the business relationship, he contacted other licensed dealers and encouraged them to stop doing business with plaintiff.  Plaintiff supports this claim with evidence that defendant contacted Rick Dooley ("Dooley"), a licensed dealer who is also defendant's

4

personal friend. After defendant discontinued his relationship with plaintiff, the defendant frequently called Dooley to "badmouth" plaintiff's business. He also encouraged Dooley to join the defendant and his brother in operating their own furniture and mattress business. These comments caused Dooley concern and anxiety. Plaintiff alleges that Dooley was negatively impacted and his ability to grow his business was hindered. Specifically, plaintiff alleges that Dooley was not able to devote his best efforts to operating his business, which caused sales to suffer.

Eventually Dooley told defendant to stop calling and defendant complied. Plaintiff claims that Dooley was then able to devote his best efforts to the business and his sales quickly increased by 35-40% percent.

Plaintiff's only surviving claim is for tortious interference with plaintiff's contractual and business relations. Under this claim, plaintiff seeks relief in the form of an injunction prohibiting future interference by defendant.

### III. Discussion

The tort of interference with a contract or business relationship occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to perform a contract with another or discontinue a business relationship with

another. A&B-Abell Elevator Company, Inc., v. Columbus/Central Ohio Building & Construction Trades Council et al., 73 Ohio St. 3d 1, 14 (1995). The elements of tortious interference with a business relationship include: (1) a business relationship, (2) the tortfeasors's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages. Wauseon Plaza Limited Partnership v. Wauseon Hardware Company, 156 Ohio App.3d 575, 588 (2004); Geo-Pro Services, Inc., Solar Testing Laboratories, Inc., 145 Ohio App.3d 514, 525 (Dist. 2001). The elements of interference with a contractual relationship are essentially the same. Fred Seigel Co., L.P.A. v. Arter & Hadden, 85 Ohio St. 3d 171, 176 (1999).

It is undisputed that the first two elements of plaintiff's claim have been satisfied. Plaintiff and Dooley had a business/contractual relationship and defendant had knowledge thereof. However, plaintiff's claim fails to satisfy the third element.

Tortious interference necessarily requires causing a third person not to perform. Universal Windows & Doors, Inc., v. Eagle Windows & Door, Inc., 116 Ohio App. 3d 692, 700 (1996). In other words, plaintiff must show that Dooley, or another licensed dealer, breached his contract or discontinued his business relationship with plaintiff as a result of defendant's conduct.

Plaintiff claims that defendant contacted multiple licensed

dealers, but only provides evidence of contact with one dealer, Dooley.  Further, plaintiff presents no evidence that Dooley or any other dealer breached a contract or discontinued a business relationship.  In fact, plaintiff's CEO, Jeffrey S. Hosking ("Hosking"), when asked during his deposition if any of defendant's actions caused any licensed dealer to breach his agreement, admitted, "[i]t hasn't caused anyone to breach their agreement that I know of."

To cover this damaging admission, plaintiff now claims that defendant's frequent "badmouthing" of its business caused Dooley to breach the "best efforts" provision of his licensing agreement.  To support this claim, plaintiff attaches an affidavit from Dooley in which he states that, "[a]s a result of [defendant's calls] and the effect they had on my attitude, my sales suffered dramatically" and "[defendant's] effort to convince me to leave [plaintiff] is the main factor that caused my sales and profits to fall."

Plaintiff's claim is unpersuasive because under the specific terms of Dooley's contract, no breach occurred and no relationship was discontinued.  Plaintiff's argument relies on Dooley's conclusory statement unilaterally declaring that he breached his contract by not putting forth his best efforts.  However, the contract specifically states that plaintiff "at its sole discretion" determines when performance has fallen to an unacceptable level which gives plaintiff the right to terminate the

contract. Specifically, Paragraph 13 of Dooley's licensing agreement, titled "Performance Improvement Plan" states:

> Licencee shall use its reasonable best effort to operate the Business and to gain sales of inventory made available by the Licensor. If in the sole discretion of the Licensor the efforts of Licensee fall below acceptable levels for the Territory, the Licensor will notify the Licensee in writing of the Licensor's perceived deficiency and the Licensor's expectation for the Territory. The Licensee shall then submit to the Licensor within **Thirty (30)** days a written plan outlining the Licensee's proposed efforts to improve the performance of the Territory. [emphasis in original].

Paragraph 15 of the licensing agreement then allows plaintiff to terminate the contract if performance has not been improved within ninety (90) days after the Performance Improvement Plan is implemented. Therefore, the "best efforts" provision of Dooley's contract, when read as a whole, giving effect to every provision,[1] reveals that only the plaintiff may determine whether Dooley's efforts fell below acceptable levels, which, in turn, could result in a breached agreement.

No evidence has been presented showing that plaintiff believed Dooley's performance fell below acceptable levels. No writing has been produced by plaintiff documenting Dooley's perceived deficiency. Further, no evidence exists that Dooley ever submitted

---

[1] A basic tenet of contractual interpretation requires that contract provisions be read as a whole, giving effect to every provision. <u>Farmers' National Bank v. Delaware Insurance Co.</u>, 83 Ohio St. 309, 337 (1911).

a Performance Improvement Plan, a prerequisite to termination of the contract.  Moreover, plaintiff's current contention that Dooley's failure to use his best efforts justifies a tortious interference claim starkly contrasts with Hosking's deposition statement in which he admitted that he was unaware of any breach resulting from defendant's actions.  Plaintiff cannot defeat summary judgment by filing an affidavit that contradicts its own deposition testimony.  See Reid v. Sears Roebuck and Co., 790 F.2d 453, 460 (6th Cir 1986); Penny V. UPS, 128 F.3d 408, 415 (6th Cir. 1997).

Summary judgement is appropriate because no evidence of circumstances amounting to a breach or discontinued relationship has been presented.  Dooley's statement that he failed to use his best efforts is insufficient to raise a genuine issue of material fact on the question of whether there was a breach of the contract/business relationship.

In addition, plaintiff's claim does not survive summary judgment because the request for injunctive relief is moot.  The purpose of injunctive relief is to prevent future violations; therefore, a court's power to hear a case and grant injunctive relief survives beyond the illegal conduct.  United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).  However, the moving party must show that the relief is needed.  Id.  They must show a cognizable danger, that is more than a mere possibility, that the offending conduct will occur again.  Id.

Plaintiff has failed to produce evidence sufficient to demonstrate a danger that defendant will again engage in the alleged conduct. Plaintiff claims that defendant contacted numerous licensed dealers and attempted to interfere with their business relationships; however, plaintiff only presents evidence of contact with Dooley. Moreover, Dooley admitted that defendant ceased making the offending phone calls after he was asked to stop. No other evidence of past or future contact between defendant and any of plaintiff's licensed dealers has been presented. Absent additional evidence, plaintiff's claim for injunctive relief is moot.

All claims shall be dismissed because plaintiff has failed to present sufficient evidence of a breach and sufficient need for injunctive relief. Hence, this court declines to address defendant's secondary argument in support of summary judgment; that defendant was justified in any contact with Dooley.

Lastly, in defendant's motion for summary judgment, he requests attorney fees for plaintiff's continued defense of this "frivolous claim." This request for attorney fees is denied as plaintiff's arguments, while failing as a matter of law, are not so frivolous in nature as to warrant the imposition of sanctions.

**IV. Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is granted.  The clerk shall enter final judgment in favor of defendant on all of plaintiff's claims, dismissing plaintiff's complaint with prejudice.  Costs shall be taxed against plaintiff.

It is so ORDERED.

s/James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 2, 2005